**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **RAFAEL ANTONIO RODAS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:05cv473** |
| | ) | |
| **MICHAEL CHERTOFF, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiffs, eighteen[1] foreign nationals from El Salvador, allege (i) that each applied for and was granted Temporary Protective Status ("TPS") by the Department of Homeland Security ("DHS") and (ii) that defendants' refusal to renew their TPS status violated the Immigration and Nationality Act, codified at 8 U.S.C. § 1254, et. seq., and plaintiffs' due process rights under the 5th Amendment.  They seek declaratory and injunctive relief, including, *inter alia*, an order granting them TPS.

The threshold jurisdictional questions presented by way of DHS' Rule 12(b)(1), Fed. R. Civ. P., dismissal motion are:

> (i) whether DHS' decision to deny TPS to plaintiffs in the first instance is subject to judicial review; and

> (ii) whether a federal district court has jurisdiction to consider plaintiffs' claims that DHS violated their due process rights under the Fifth Amendment by denying TPS status to them after having granted them temporary work authorizations.

---

[1] While the original complaint listed nineteen plaintiffs, plaintiff Norma Guillen Delgado was granted TPS and accordingly her claim has been voluntarily dismissed.

1

**I.**

Central to the jurisdictional analysis are the facts of each plaintiff's TPS applicant status. These facts, summarized here, are (i) derived from the parties supplemental briefs and affidavits; (ii) undisputed; and (iii) appropriately considered in resolving a Rule 12(b)(1), Fed. R. Civ. P., jurisdictional challenge.[2]

1. Plaintiff Juan Carlos Alfaro Alas: Plaintiff Alas applied for TPS on May 22, 2001. During the pendency of his TPS application, Alas applied for and was granted temporary employment authorization on two occasions. The parties' supplemental documentation confirms: (i) that Alas was granted temporary employment authorization on June 20, 2001 lasting until September 9, 2002; (ii) that on September 4, 2002, Alas applied to renew this temporary employment authorization, which was granted on December 11, 2002; (iii) that this renewal authorized Alas to seek employment in the United States until September 9, 2003; and (iv) that on October 8, 2002, the local Bureau of Citizenship and Immigration Services ("CIS") requested Alas provide additional evidence in support of his TPS application. There is no record evidence that Alas responded as required within 12 weeks; accordingly, CIS, on July 16, 2003, denied his TPS application as abandoned. Thereafter, Alas filed a motion to reconsider CIS' denial of TPS. Because this motion was untimely, and because CIS did not find that the delay in filing the motion was either reasonable or beyond Alas' control, his motion to reconsider the TPS denial was denied. *See* 8 C.F.R. § 103.5(a)(4) (stating criteria for granting a motion to reconsider a

---

[2] *See Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); Wright and Miller, Federal Practice and Procedure: Civil 3d § 1363 (same).

denial of TPS).

2. <u>Plaintiff Kerin Rivera Lopez</u>: Plaintiff Lopez applied for TPS on August 26, 2002.
During the pendency of his TPS application, Lopez applied for and was granted temporary
employment authorization.  The parties' supplemental documentation confirms: (i) that Lopez
was granted temporary employment authorization commencing on September 10, 2002, and
lasting until March 9, 2003 and (ii) that on May 13, 2002, CIS informed Lopez by letter that it
was going to deny his TPS application unless Lopez provided evidence within 30 days tending to
show that he was physically present in the United States from March 9, 2001 until August 26,
2002.  Because Lopez did not respond, CIS, on October 15, 2003, denied his TPS application as
abandoned.

3. <u>Plaintiff Francisco N. Amaya-Castro</u>: Plaintiff Amaya-Castro applied for TPS on April
2, 2001.  During the pendency of his TPS application, Amaya-Castro applied for and was granted
temporary employment authorization.  The parties' supplemental documentation confirms: (i)
that Amaya-Castro applied for and was granted temporary employment authorization
commencing on May 11, 2001 and lasting until September 9, 2002; (ii) that on October 7, 2002,
Amaya-Castro applied to renew his employment authorization, which was approved on January
16, 2003; (iii) that this January 16 authorization permitted Amaya-Castro to work in the United
States until September 9, 2003; and (iv) that on December 9, 2002, CIS requested Amaya-Castro
provide additional evidence in support of his TPS application.  No record evidence reflects that
Amaya-Castro responded.  Because he did not respond within 12 weeks, CIS, on July 7, 2003,
denied his application as abandoned.

4. <u>Plaintiff Luis Guillen-Arias</u>: Plaintiff Guillen-Arias applied for TPS on May 2, 2001.

3

During the pendency of his TPS application, Guillen-Arias applied for and was granted temporary employment authorization.  The parties' supplemental documentation confirms: (i) that Guillen-Arias applied for and was granted temporary employment authorization commencing on June 14, 2001, and lasting until September 9, 2002; and (ii) that on February 6, 2002, CIS requested Guillen-Arias provide additional evidence in support of his TPS application.  No record evidence reflects that Guillen-Arias responded.  Because Guillen-Arias did not respond within 12 weeks, CIS, on August 8, 2003, denied his application as abandoned.

     5.  <u>Plaintiff Marta Luz Reyes-Beltran</u>: Plaintiff Reyes-Beltran applied for TPS and temporary employment authorization on March 21, 2001.  Although the record evidence does not indicate whether her application for temporary employment authorization was granted, it appears this request was granted, as the record reflects that on September 10, 2002, she applied to renew her temporary employment authorization until September 9, 2003, which application was also granted.  The record also reflects that on January 14, 2002, CIS requested Reyes-Beltran provide additional evidence in support of her TPS application, but there is no record evidence that Reyes-Beltran did so.  Accordingly, on February 3, 2003, CIS denied her TPS application as abandoned.

     On March 10, 2003, Reyes-Beltran filed a motion to reconsider CIS' denial of her TPS application.  Because her motion was untimely, and because the CIS did not find that the delay in filing the motion was either reasonable or beyond Reyes-Beltran's control, her motion to reconsider was denied.  *See* 8 C.F.R. § 103.5(a)(4).

     It appears from the record that, following CIS' denial of her TPS application, Reyes-Beltran applied for temporary employment authorization on February 25, 2004 and February 27, 2005, respectively.  Documentation she provided suggests that her 2004 temporary work

employment authorization application was successful.  In any event, however, there is no record evidence to suggest either (i) that Reyes-Beltran ever received permanent employment authorization that necessarily accompanies a grant of TPS or (ii) that Reyes-Beltran complied with CIS' request for supplemental information in connection with her unsuccessful TPS application.

6. <u>Plaintiff Sergio Ernesto Bonilla Flores</u>: Plaintiff Flores applied for TPS on April 20, 2002.  During the pendency of his TPS application, Flores applied for and was granted temporary employment authorization.  The parties' supplemental documentation confirms: (i) that Flores was granted temporary employment authorization commencing on May 22, 2002, and lasting until September 9, 2002; and (ii) Flores' application to renew his temporary employment authorization was approved commencing on January 13, 2002, and lasting until September 9, 2003; (iii) that CIS requested Flores provide additional evidence in support of his TPS application.  No record evidence suggests that Flores responded.  Because Flores did not respond within 12 weeks, CIS, on May 15, 2003, denied his application as abandoned.

7. <u>Plaintiff Santos C. Flores</u> ("Santos Flores"): Plaintiff Santos Flores applied for TPS and temporary employment authorization on February 4, 2002.  Her application for temporary employment authorization was granted commencing March 5, 2002, and lasting until September 9, 2002.  The record indicates that on September 5, 2002, CIS requested Santos Flores provide additional evidence in support of her TPS application.  No record evidence suggests Santos Flores responded.  Because Flores did not respond within 12 weeks, CIS, on February 20, 2003, denied her application as abandoned.  On June 21, 2004, Santos Flores filed a motion to reconsider CIS' denial.  Because this motion was untimely, and because the CIS did not find that

the delay in filing the motion was either reasonable or beyond Santos Flores' control, her motion

to reconsider CIS' denial of her TPS application was denied on August 20, 2004. *See* 8 C.F.R. §

103.5(a)(4).

       8. <u>Plaintiff Jose Nunez Saravia</u>: Plaintiff Saravia applied for TPS on March 30, 2001.

During the pendency of his TPS application, Saravia applied for and was granted temporary

employment authorization.  The parties' supplemental documentation confirms: (i) that Savaria

was granted temporary employment authorization commencing on May 8, 2001, and lasting until

September 9, 2002; and (ii) that on August 18, 2001, Savaria was requested to appear at a

specified Application Support Center for fingerprinting.  After he failed to appear, Savaria's TPS

application on April 3, 2002 was denied as abandoned.  On January 31, 2003, Savaria filed a

motion to reconsider CIS' denial of his TPS application.  Because this motion was untimely, and

because the CIS did not find that the delay in filing the motion was either reasonable or beyond

Savaria's control, his motion to reconsider CIS' denial of his TPS application was denied on May

20, 2003. *See* 8 C.F.R. § 103.5(a)(4).

       9. <u>Plaintiff Sulma D. Campos Cordero</u>: Plaintiff Cordero applied for TPS on March 19,

2001.  During the pendency of her TPS application, Cordero applied for and was granted

temporary employment authorization.  The parties' supplemental documentation confirms: (i)

that Cordero was granted temporary employment authorization commencing on May 1, 2001,

and lasting until September 9, 2002; and (ii) that on July 25, 2001, Cordero was requested to

appear at a specified Application Support Center for fingerprinting.  After she failed to appear,

CIS, on May 17, 2002, denied Cordero's TPS application as abandoned.  On August 21, 2003,

Cordero applied for renewal of her employment authorization, which CIS denied on September

10, 2003.

     10.  <u>Plaintiff Christian A. Alfonso</u>: Plaintiff Alfonso applied for TPS on June 22, 2001. During the pendency of his TPS application, Alfonso applied for and was granted temporary employment authorization.  The parties' supplemental documentation confirms: (i) that Alfonso applied for temporary employment authorization in an application dated June 16, 2001.  The record evidence does not indicate whether this initial request for temporary employment authorization was approved.  A subsequent temporary employment authorization application dated September 10, 2002, indicates that CIS renewed his temporary employment authorization until September 9, 2003.  On March 13, 2003, the INS notified Alfonso of its intention to deny his TPS application, but also informed him that he would have the opportunity to submit further documentation in support of his application.  Alfonso did not respond to this notice, and accordingly, CIS, on May 29, 2003, denied his application as abandoned.

     11.  <u>Rafael Antonio Rodas</u>: Plaintiff Rodas applied for TPS on July 18, 2001. During the pendency of his TPS application, Rodas applied for and was granted temporary employment authorization. The parties' supplemental documentation confirms (i) that Rodas applied for temporary employment authorization on July 18, 2001; (ii) that Rodas was granted temporary employment authorization commencing August 15, 2001, and lasting until September 19, 2002; and (iii) that on April 12, 2002, Rodas was requested to appear at a specified Application Support Center for fingerprinting.  When he failed to appear, CIS, on November 1, 2002, denied his TPS application as abandoned.  Rodas' application to renew his temporary employment authorization, filed following denial of his TPS application, was denied on January 10, 2003.

12. <u>Plaintiff Ramiro Duran Escobar</u>: Plaintiff Escobar applied for TPS on April 20, 2002. During the pendency of his TPS application, Escobar applied for and was granted temporary employment authorization commencing May 30, 2002, and lasting until September 9, 2002. CIS renewed Escobar's temporary employment authorization on March 11, 2003, authorizing him to work until September 9, 2003. On May 8, 2003, CIS notified Escobar that it intended to deny his TPS application on the grounds (i) that Escobar had not shown that he had established a residence in the United States as of February 13, 2001; and (ii) that Escobar had not established continuous physical presence in the United States from March 9, 2001 until Escobar filed for TPS. *See* 8 C.F.R. § 103.2(b)(8) (authorizing requests for additional documentation). Although CIS provided Escobar with an opportunity to remedy these deficiencies, he did not respond. Accordingly, CIS, on July 2, 2003, denied his TPS application. On March 9, 2005, Escobar filed a motion to reconsider this denial. Because this motion was untimely, and because the CIS did not find that the delay in filing the motion was either reasonable or beyond Escobar's control, his motion to reconsider was denied on April 15, 2005. *See* 8 C.F.R. § 103.5(a)(4). Because Escobar's TPS denial was on the merits, he could have availed himself of an appeal to the Administrative Appeals Unit, but failed to do so. *See* 8 C.F.R. § 244.10(c) (permitting appeal from denial of TPS on the merits).

13. <u>Plaintiff Israel Rivera Avalos</u>: Plaintiff Avalos applied for TPS on August 15, 2001. During the pendency of his TPS application, Avalos applied for and was granted temporary employment authorization. The parties' supplemental documentation confirms (i) that Avalos applied for temporary employment authorization on August 8, 2001; (ii) that such authorization was granted commencing September 10, 2001, and lasting until September 9, 2002; (iii) that CIS

8

renewed Avalos' temporary employment authorization until September 9, 2003; and (iv) that on

March 25, 2003, CIS denied Avalos' TPS application on the ground that he failed to establish

that he had resided continuously in the United States since February 13, 2001.  Because Avalos'

TPS denial was on the merits, he could have availed himself of an appeal to the Administrative

Appeals Unit, but failed to do so.  *See* 8 C.F.R. § 244.10(c) (permitting appeal from denial of

TPS on the merits).

      14.  <u>Plaintiff Natividad D. Sanchez</u>: Plaintiff Sanchez applied for TPS on September 15,

2002.  He subsequently re-registered his TPS application on November 11, 2002.  Sanchez also

applied for temporary employment authorization on September 15, 2002.  His application for

temporary employment authorization was granted commencing January 7, 2003, and lasting until

March 9, 2003.  On November 11, 2002, Sanchez reapplied for temporary employment

authorization, which CIS granted on January 22, 2003, lasting until September 9, 2003.  The

record indicates that on February 2, 2004, CIS sent Sanchez a letter notifying him of its intent to

deny his TPS application for failure to establish continual physical presence in the United States

from March 9, 2001 until September 15, 2002, the date Sanchez filed for TPS.  There is no

evidence that Sanchez filed documents to cure this deficiency in his application.  Accordingly, on

March 31, 2003, CIS denied Sanchez's TPS application.  On August 29, 2003, CIS erroneously

approved temporary employment authorization documents that Sanchez refiled.  Defendant

represented in a supplemental affidavit by Mary Liscinsky, a Supervisory Center Adjudications

Officer employed by DHS, that CIS is in the process of revoking this approval.  Because

Sanchez's TPS denial was on the merits, he could have availed himself of an appeal to the

Administrative Appeals Unit, but failed to do so.  *See* 8 C.F.R. § 244.10(c) (permitting appeal

from denial of TPS on the merits).

15. <u>Plaintiff Camilla Aguirre D. Rauda</u>:  Plaintiff Rauda applied for TPS on February 11, 2002.  She subsequently re-registered her TPS application on October 7, 2002, and September 9, 2003.  During the pendency of her TPS application, Rauda also applied for temporary employment authorization on February 11, 2002, which was granted, authorizing her to work commencing March 6, 2002, and lasting until September 9, 2002.  CIS approved Rauda's application to re-register for temporary employment authorization, permitting her to work until September 9, 2003.  Rauda again sought temporary employment authorization on September 8, 2003, which CIS also approved, permitting Rauda to work until March 9, 2005.

The record indicates that Rauda's initial TPS application was approved on January 31, 2003.  CIS subsequently withdrew Rauda's TPS approval on three independent grounds, namely (i) that Rauda was ineligible for TPS under 8 U.S.C. § 1182(a)(6)(c); (ii) that Rauda failed to establish that she resided continuously in the United States; and (iii) that Rauda failed to establish that she was continuously physically present in the United States from March 9, 2001 to February 11, 2002, the date Rauda filed her TPS application.  Rauda filed an appeal of CIS' denial of her TPS application with the Administrative Appeals Unit, which was denied on June 17, 2005.

16. <u>Plaintiff Jose D. Ruiz Blanco</u>:  Plaintiff Blanco applied for TPS and temporary employment authorization on October 22, 2001.  The parties' supplemental documentation indicates (i) that Blanco's application for temporary employment authorization was granted commencing December 1, 2001, lasting until September 9, 2002; (ii) that Blanco re-registered for TPS and temporary employment authorization on April 24, 2002; (iii) that his temporary

employment application was approved on December 6, 2002, authorizing Blanco to seek employment until March 9, 2003; (iv) that Blanco re-registered for temporary employment authorization on September 15, 2003; and (v) that this temporary employment application was approved on February 3, 2004, authorizing Blanco to seek employment until March 4, 2005.

On August 11, 2003 CIS denied Blanco's TPS application on the grounds that Blanco had failed to establish (i) that he resided continuously in the United States since February 13, 2001; and (ii) that he was continuously present in the United States from March 9, 2001 to October 22, 2002, the date Blanco filed his TPS application.  Blanco filed an appeal of CIS' denial of his TPS application with the Administrative Appeals Unit, which was denied on April 6, 2005.

17. <u>Plaintiff Jose Erik Rivera</u>: It is undisputed that plaintiff Rivera received TPS.  The parties agree his claim is moot.

18. <u>Plaintiff Ageo Diaz</u>: It is undisputed that plaintiff Diaz received TPS.  The parties agree his claim is moot.

In summary, therefore, all plaintiffs except Rivera and Diaz filed TPS applications and all were ultimately denied; none received TPS, although one, Rauda, held TPS briefly before DHS withdrew it, claiming it had been improvidently granted.  Of the fifteen plaintiffs who did not receive TPS at any point, all at one time or another succeeded in obtaining temporary work authorization from DHS.  And of these fifteen plaintiffs, ten successfully renewed their temporary employment authorization one or more times.  On these facts, the question is whether plaintiffs are entitled to judicial review of their due process claims in this or any other court.

## II.

Congress created TPS in 1990 as part of an amendment to the Immigration and

Nationality Act ("INA").  *See* 8 U.S.C. § 1254a.  It did so in recognition of the fact that armed

conflicts were ongoing and might erupt in various parts of the world, making it inappropriate to

return foreign nationals to these areas.  Accordingly, in the 1990 INA amendments, Congress

authorized first the Attorney General, and then in 2003, the Secretary of DHS,[3] to grant TPS to

eligible foreign nationals after determining that there is an ongoing armed conflict in the foreign

nationals' country and that returning those persons to that country would pose a serious threat to

their safety.  In turn, the Secretary of DHS has delegated his authority over TPS application

decisions to the local CIS directors.  *See* 8 C.F.R. § 244.7(a).  In essence, TPS permits eligible

aliens from designated countries to obtain temporary immigration status and protection from

removal because they are unable to return to their homeland.  *See generally* 8 U.S.C. § 1254(a).

More specifically, the current TPS statutory and regulatory scheme[4] is as follows: The

Secretary of DHS "may designate any foreign state" if he determines (i) that there is an ongoing

armed conflict in that state that would make it difficult for citizens of that state to return; (ii) that

the state has suffered an "environmental disaster"; or (iii) that there are "extraordinary and

temporary conditions in the foreign state that prevent aliens who are nationals of the state from

returning to the state in safety."  8 U.S.C. § 1254(b)(1).  Aliens from these designated countries

may apply for TPS by filing an application with the local CIS director for the jurisdiction in

which the alien resides.  8 C.F.R. § 244.7(a).  An applicant must submit documentation or

information in support of his application tending to show eligibility for TPS, as well as any other

---

[3] Since the inception of the Department of Homeland Security in 2003, the DHS Secretary has made all TPS determinations.

[4]*See generally* 8 U.S.C. § 1101 (granting the Attorney General authority to promulgate regulations to implement the INA).

documentation or information that CIS may require.  *See* 8 C.F.R. § 244.9.  Should such

documentation be unavailable, CIS may permit submission of alternative documentation, or

require proof of efforts to obtain the requested information.  *See id.*  When CIS requests

additional documentation or information in order to make a determination on an application, it is

incumbent on the applicant to file a timely response; failure "to timely respond to a request for

[such] information ... without good cause will be deemed an abandonment of the application and

will result in a denial of the application. ..."  *See id.*  An applicant has 12 weeks to respond to a

request for documentation or information; additional time may not be granted.  8 C.F.R. §

103.2(b)(8).  A denial on abandonment grounds is not appealable.  8 C.F.R. § 103.2(b)(15).

Applicants, however, may seek reconsideration of denials on abandonment grounds.

Importantly, such motions are available only (i) if the requested evidence is not material to the

issue of eligibility; (ii) if the requested evidence was submitted with the initial application or was

submitted within the allotted 12 week period; (iii) if the request for additional information or an

appearance by the applicant was sent to a different address than that listed by the applicant on his

TPS application; or (iv) if the applicant advised the appropriate agency of a change of address in

writing after applying, and the request did not go to the new address.  Also, any motion to

reconsider must be filed within 30 days of the adverse decision.  8 C.F.R. § 103.5(a)(1)(i).  The

agency in its discretion may only excuse a failure to file a motion for reconsideration where the

delay was (i) reasonable and (ii) beyond the control of petitioner or applicant.  *Id.*

While an application for TPS is pending, an applicant who establishes "prima facie

eligibility" for TPS is entitled to "temporary treatment benefits," 8 C.F.R. § 244.10(a), including

a "temporary stay of deportation" and "temporary employment authorization."  8 C.F.R. §

244.10(e)(1).  Applicants who obtain temporary treatment benefits are also given an employment authorization document as evidence of their entitlement to such benefits.  *Id.*  Temporary treatment benefits "remain in effect until a final decision has been made on the application for Temporary Protected Status."  8 C.F.R. § 244.10(e)(2).  Temporary treatment benefits are not TPS, however.

The local CIS director decides whether to grant an application for TPS.  *See* 8 C.F.R. § 244.10.  Important–indeed, central–to the decision here is the statutory command that the initial decision to grant or deny TPS is not reviewable by any court.  *See* 8 U.S.C. § 1252(a)(2)(B). Specifically, the statute maintains that "no court shall have jurisdiction to review ... any decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the grant of relief [pursuant to INA provisions not at issue here]."  *Id.*  If TPS is granted, TPS status "shall be evidenced by the issuance of an alien registration document" which, for those aliens who have requested authorization to work, is an employment authorization document.  8 C.F.R. § 244.10(f)(1).  If TPS is denied on the merits, the applicant may appeal to the Administrative Appeals Unit unless the reason for denial also constitutes a ground for deportability or excludability.  8 C.F.R. § 244.10(c).  In the latter case, the denial must include a charging document setting forth the grounds for denial and initiating deportation or exclusion proceedings.  The alien has the right to a *de novo* determination of eligibility for TPS at these proceedings.

Given this statutory and regulatory framework, it is clear that there is no jurisdiction in this or any court to review the claims of the fifteen plaintiffs who were denied and never received TPS.  This follows from the plain language of 8 U.S.C. § 1252(a)(2)(B), which states, with

pellucid clarity, as follows: "[N]o court shall have jurisdiction to review ... any decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the grant of relief [pursuant to INA provisions not at issue here]."  Because Congress has plainly committed the initial decision to grant or deny TPS to the unreviewable discretion of the Secretary of DHS, there is no jurisdiction in this or any court to review the merits of the Secretary's denial of TPS to the fifteen plaintiffs.

Seeking to avoid this result, these fifteen plaintiffs, each of whom received temporary employment authorization, argue that this status is tantamount to receiving TPS, or the essential equivalent of it, and that its withdrawal, without due process therefore violates the Fifth Amendment.  This short answer to this argument is that temporary employment authorization is quite obviously not tantamount to, or the equivalent of, TPS.  Authorization to work for a limited time confers on an alien no legal immigrant status and no protection from removal; TPS does precisely this.  While a plausible argument may be made that TPS is a property right that cannot be withdrawn without due process, the same cannot be said of temporary employment authorization.

In any event, even assuming without deciding that temporary employment authorization is a property right that warrants Fifth Amendment protection, it is clear from 8 U.S.C. § 1252(a)(2)(D) that judicial review of any due process claims stemming from withdrawal of temporary employment authorization is limited to the courts of appeal; district courts have no jurisdiction to review such claims.[5]

_____

[5]Section 1252(a)(2)(D) states:

Nothing in subparagraph (B) or (C), or in any other provision of this chapter

In sum, then, plaintiffs Alas, Lopez, Amaya-Castro, Guillen-Arias, Reyes-Beltran, Flores, Santos Flores, Savaria, Cordero, Alfonso, Rodas, Escobar, Avalos, Sanchez, and Blanco were never granted TPS.  Accordingly, their claims are not reviewable in any court.  *See* 8 U.S.C. § 1252(a)(2)(B) (initial DHS decision to grant or deny TPS is unreviewable).  With respect to plaintiff Rauda, whom DHS granted, then revoked TPS, she must pursue her claims in the court of appeals.  *See* 8 U.S.C. § 1252(a)(2)(D) (granting courts of appeal exclusive jurisdiction over constitutional claims or questions of law pertaining to, *inter alia*, TPS withdrawal).  As for plaintiffs Rivera and Diaz, their claims must be dismissed as moot given that both have received TPS.

An appropriate final order will issue.

_____/s/_____

Alexandria, Virginia                                    T. S. Ellis, III
November 8, 2005                                        United States District Judge

---

(other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review ***filed with an appropriate court of appeals*** in accordance with this section.  (emphasis added).

16